## MOORER, et al. *v.* WILLIS.

No. 41508 June 13, 1960 121 So. 2d 127

*Wm. Harold Cox,* Jackson, for appellants and cross appellees.

*Cecil F. Travis, Willis T. Matthews, M. Curtiss Mc-Kee,* Jackson, for appellee and cross-appellant.

Kyle, J.

This suit involves a contest between the parties over a sum of money paid into the registry of the Chancery

Court of Hinds County by the State Building Commission as the purchase price of a parcel of land in the City of Jackson which was conveyed by quitclaim deed to the State Building Commission by Karl S. Moorer and others on December 8, 1958. The land was being purchased by the State for the use of the Mississippi Fair Commission under authority of Chapter 430, Laws of 1952. The interest actually conveyed by said quitclaim deed was the unexpired portion of a 99-year leasehold interest in the land, which is referred to in the record as seat of government land, owned by Louis Clarence Moorer, deceased, at the time of his death.

The records show that L. C. Moorer acquired title to the property by deed of conveyance from J. E. Laughlin and C. E. Laughlin dated June 11, 1912, and that he continued to own the same until his death; that L. C. Moorer died on October 27, 1933, at the age of 81 years; that he left surviving him his wife, Mrs. Mary Louise Moorer, who is referred to in the record as Mrs. L. C. Moorer, and two children, Karl S. Moorer and Mrs. Susie Moorer Willis, and five grandchildren, Clarence A. Moorer, Karl L. Moorer, Lottie Clare Moorer Specht, Helen Moorer Watson, and Elsie Moorer Hafley, who were the surviving children of C. A. Moorer, deceased son of the said L. C. Moorer. The record also shows that the said L. C. Moorer left a last will and testament dated September 12, 1908, and a codicil thereto dated November 12, 1928, which were duly admitted to probate by a proper decree of the Chancery Court of the First Judicial District of Hinds County on November 4, 1933.

In the first item of said will the testator directed that all of his debts be paid. In the second item of said will the testator devised and bequeathed to his wife Mary Louise Moorer all of his property, both real and personal, for the term of her natural life, and directed that after her death the property "be equally divided between my children or their representatives." In the third item of his will, the testator stated that he had given his

two sons, Karl Moorer and Clarence Moorer, $2,000 each at various times in the past, and that in the event he should died before he paid his daughter, Susie Willis, a like amount his executrix should be authorized to pay his said daughter the sum of $2,000 out of his estate. In the last item of the will the testator appointed his wife, Mary Louise Moorer, executrix to serve without bond. In a memorandum added at the bottom of the will the testator stated that since making the will he had given his daughter, Susie M. Willis, a deed to a lot for $1200, and that she had also received two Haywood City bonds.

The codicil, dated November 12, 1928, is as follows:

"Jackson, Miss., Nov. 12, 1928.

"Since writing the within will my eldest son C. A. Moorer has died leaving five children.

"I hereby appoint my son Karl Moorer Guardian or Trustee without bond to handle the one third of my property being my son C. A. Moorer's share if he was alive for the benefit of his five children, Clarence—Karl—Helen—Elsie & Lottie Clare.

"I desire he should handle this without process of law leaving him sole judge as to when *and* it shall be distributed. I hereby appoint my son Karl Moorer and my Daughter Susie Moorer Willis to take charge of and divide my property. If my dear wife Mary Louise Moorer outlives me then the within will shall be in full force if my wife Louise Moorer outlives me and she shall full power and authority do divide my property or will the same as seemeth best to her. I consider the Mississippi Inheritance Tax Law the most iniquitous effort at tax grabbing. Therefore I desire that my estate be divided without getting same into court so *the* my children and their heirs may *get all my estate.*

L. C. Moorer."

The record further shows that the said Mrs. Mary Louise Moorer qualified as executrix, filed an inventory of the assets of the estate, and on May 31, 1934, filed a final account and a petition for approval of said final account. In her petition for approval of said final account the executrix asked that the Court construe said will and codicil and adjudicate her interests and right in said property under the terms of said will and codicil, and her powers and duties with respect to the handling, sale, investment and use of the properties. A decree approving said final account was signed by the chancellor on August 15, 1934; and in the decree the executrix was authorized to pay accrued court costs and a fee to her attorneys, and to pay over to herself the balance of the cash and property in the estate, as devisee and legatee under the terms of the will and codicil; and it was then ordered that the executrix take and file herein vouchers for said three payments, "and that thereupon this cause be remanded to the files, subject to further orders of the court."

The record shows further that on October 10, 1944, Mrs. L. C. Moorer executed a warranty deed conveying to Mrs. Susie Moorer Willis the land involved in this suit, reserving to herself a life estate therein; that the deed was a deed of gift; and that Mrs. L. C. Moorer died intestate on March 29, 1952. The record shows that the land referred to was rental property, situated in close proximity to the State Fair Grounds; that there were three tenant houses on the land which were rented to tenants; and that Mrs. Moorer collected the rents on the property, paid the taxes and costs of repairs, and retained the net proceeds for her own use, up to the time of her death; and that after her death, Mrs. Willis took possession of the property and thereafter collected the rents and exercised all rights of ownership over the property until the property was conveyed to the State Building Commission by quitclaim deed executed by Karl S. Moorer, Mrs. Willis and each of the five children

of A. C. Moorer on December 8, 1958. The net income from rentals received by Mrs. Willis during the time she was in possession of the property, after her mother's death amounted to $3,545.39.

The bill of interpleader was filed on January 16, 1959. All of the above named parties were named as defendants in the bill of interpleader. An order was entered immediately by the chancellor authorizing the Mississippi Fair Commission to pay the $5,000 purchase price of said property into the registry of the court and directing that the clerk receive and hold the same subject to further orders of the court.

The defendants, Clarence A. Moorer, Karl L. Moorer, Lottie Clare Specht, Helen Watson, and Elsie Hafley, filed their "answer and claim" on March 13, 1959, and attached to their answer a copy of the will of L. C. Moorer, deceased, and the codicil thereto dated November 12, 1928, and also copy of the final decree of the Chancery Court rendered on August 15, 1934, approving the final account of Mrs. Mary Louise Moorer, executrix of said will and codicil. In their "answer and claim" the above named defendants asked that they be awarded a decree for $1,666.66, representing their undivided one-third share of the fund in the registry of the court, to be divided equally among them.

On March 20, 1959, Mrs. Susie Moorer Willis filed an "Intervening Petition to the Bill of Interpleader", in which she named as adverse parties to her intervening petition the above named defendants. In her intervening petition, the petitioner alleged that, after the rendition of the final decree in the administration proceeding on August 15, 1934, Mrs. L. C. Moorer entered into the exclusive possession of the above mentioned property, considering it as her own, and held the same adversely against all the world until her death in 1952, and that none of the adverse parties herein ever attempted to assert any adverse claim against her; that the said Mrs. L. C. Moorer conveyed said property to the petitioner on October 10, 1944, by warranty deed, but

reserved in herself a life estate in said property; that upon the death of Mrs. Moorer the petitioner entered into active management of the tenant houses located on said property, collected the rents therefrom, and accounted to no one for the same. The petitioner therefore claimed that she had acquired a valid fee simple title to said property by virtue of Section 711, Mississippi Code of 1942, and that the adverse claimants were barred by Code Section 709 and Code Section 710 from asserting any claim to said property. The petitioner further alleged that the final decree dated August 15, 1934, was res judicata as to the title of Mrs. L. C. Moorer in and to said property; and the petitioner asked that the court adjudicate and determine that petitioner was the sole owner of said property, and that she was entitled to the entire $5,000 which had been paid into the registry of the court. The petitioner named as adverse parties to her petition the claimants mentioned above.

The claimants, named as adverse parties in the above mentioned petition, filed their answer to said petition, and in their answer denied that the court had construed the will and codicil of L. C. Moorer in the decree approving the executrix' final account, or had adjudicated that Mrs. Moorer was vested with sole ownership of the property by the terms of the will and codicil. The claimants averred in their answer that Mrs. Moorer was in fact trustee of their undivided one-third interest in said property, subject to her life estate therein, under the terms of said will and codicil; that Mrs. Moorer was vested with only a life estate in said property, and that she was estopped to assert any claim therein adverse to the claimants, who were the owners of a one-third interest in said property, subject to Mrs. L. C. Moorer's life estate; that the claimants, as the owners of a one-third interest in the property, after the termination of the life estate, were entitled to a one-third part of the proceeds of the sale of the property, and that the claimants were entitled to an accounting for their one-

third part of the net rents received by the petitioner from said property after March 23, 1952. The claimants made their answer a cross bill and asked that a decree be entered awarding to them an amount equal to a one-third part of the purchase price of the land conveyed, and, in addition thereto, a one-third part of the net rents received by Mrs. Willis since the death of Mrs. L. C. Moorer.

Karl S. Moorer answered the intervening petition filed by Mrs. Willis, and in his answer agreed that Mrs. Willis should take his one-third part of the proceeds of the sale of the land to the State Building Commission, if the court should hold that he was entitled to share in the purchase price received for the land.

The chancellor at the conclusion of the hearing held that Mrs. Mary Louise Moorer acquired only a life estate in the property under the will and codicil of her deceased husband; and that she was never discharged as executrix. The chancellor found that no settlement or distribution among the grandchildren of their undivided one-third interest in the estate and property had been made by Mrs. Moorer as executrix; that Mrs. Moorer died intestate; that her possession and occupancy of the property had been that of a life tenant, and not adverse to the interest of the claimant-grandchildren as remaindermen. The chancellor found that the claimants, appellants on this appeal, were entitled to a one-third part of the proceeds of the sale of the property to the State Building Commission, less court costs, and that Mrs. Susie Moorer Willis, the appellee, was entitled to a two-thirds part of the proceeds of the sale, after the payment of court costs. The chancellor was of the opinion that, since the proceeding was a proceeding under a strict bill of interpleader filed by a disinterested stakeholder, the court could not deal with the claimants' cross claim against the petitioner, Mrs. Susie Moorer Willis, for an accounting for rents collected by her after the death of Mrs. L. C. Moorer in 1952. The chancellor

found, however, that the net amount of the rents collected by Mrs. Willis and retained by her since March 23, 1952, was $3,545.39. A decree was therefore entered awarding to the claimants a one-third part of the $5,000, which represented the purchase price of said property, and to the petitioner, Mrs. Susie Moorer Willis, a two-thirds part of said amount, and dismissing without prejudice the cross claim filed by the claimants against the petitioner for a one-third part of the rents collected on the properties after the death of Mrs. L. C. Moorer. From that decree the claimants have prosecuted this appeal, and the petitioner, Mrs. Susie Moorer Willis, has filed a cross assignment of errors.

The appellants have assigned and argued only one point as ground for reversal of the decree of the lower court, and that is, that the court erred in refusing to enter a decree in favor of the appellants for one-third of the amount of the net rents collected by the appellee from the tenants occupying the property involved in the controversy after March 23, 1952, and in refusing to enter a decree directing that said one-third part of the net rents be paid to the appellants out of the appellee's two-thirds part of the proceeds of the sale.

The appellee, in her cross assignment of errors, has likewise assigned and argued only one point as ground for reversal of the decree of the lower court, and that is, that the lower court erred in its holding that the appellants were entitled to a one-third share of the impleaded funds.

 █ We shall consider the appellee's cross assignment of errors first. We think there was no error in the chancellor's finding that the claimants, who were the surviving children of Clarence A. Moorer, deceased son of the testator, were entitled to a one-third part of the proceeds of the sale of the property. Under the will the testator devised the property to his wife, Mrs. Mary Louise Moorer, for the term of her natural life, and directed that after her death the property should be di-

vided equally between his children "or their representatives." The codicil, written twenty years later and after the death of the testator's son, Clarence A. Moorer, shows on its face that its main purpose was to provide for the handling of the one-third part of the testator's property which the testator referred to as "my son, C. A. Moorer's share," if he were alive. The testator appointed his son, Karl Moorer, guardian or trustee, to handle the one-third part of the property for the benefit of Clarence A. Moorer's five children, all of whom were minors at the time the codicil was executed. The testator then provided that if his wife, Mrs. Mary Louise Moorer, should outlive him she should have full power and authority to divide the property, or will the same as seemed best to her. The testator expressed a desire that his estate be divided without getting into court. There is nothing in the codicil which would indicate that the testator ever abandoned the intention expressed in the will that the property should be divided equally among his two surviving children, Karl S. Moorer and Mrs. Susie Moorer Willis, and the five grandchildren, who were to take the one-third part which their father would have taken had he survived the testator. The codicil indicates very clearly that the division was to be an equal division, whether it was made by Mrs. Mary Louise Moorer during her lifetime, or by Karl Moorer and Mrs. Susie Moorer Willis, or by the court.

The chancellor, in our opinion, properly held that Mrs. Moorer acquired only a life estate in the property owned by her deceased husband, and that the appellants were the owners of an undivided one-third interest in the property after the termination of Mrs. Moorer's life estate. The appellants were therefore entitled to a one-third part of the net proceeds of the sale of the property. The decree of the lower court is therefore affirmed on the issue presented in the appellee's cross assignment of errors.

■■■ We shall now consider the appellants' assignment of errors on their direct appeal.

We think the chancellor erred in his holding that the court did not have the power to deal with the appellants' cross claim against the appellee for an accounting for rents collected by the appellee after the death of Mrs. L. C. Moorer in 1952, and in his refusal to enter a judgment in favor of the appellants for a sum of money equal to one-third part of the net rents received and retained by the appellee after the death of Mrs. Moorer, on March 23, 1952, and to direct the payment of same out of the appellee's two-thirds part of the funds on deposit in the registry. The money paid into the registry of the court represented the proceeds of the sale of property owned by the parties named in the bill of interpleader as tenants in common. The purpose of the filing of the bill of interpleader was to require the interested parties to appear and assert their claims and to have the court determine the interests of each in the money paid into the registry. The court, without objection from any of the parties, took jurisdiction of the matter for the purpose of determining the rights of the respective parties to share in the funds placed in its hands for distribution; and the court had the power on the final hearing to determine the rights of the respective parties to share in the funds, and to adjust the equities arising out of the collection of rents, the payment of taxes and costs of maintenance and upkeep, or the use and occupation of the property, during the period of the cotenancy, just as the court would have had the power to determine such rights and adjust such equities if the property had been sold under the order of the court for a division of proceeds in a partition proceeding, as provided in the Code Chapter on Partition of Property (Chapter 4, Title 7, Mississippi Code 1942, Anno.); Griffith's Mississippi Chancery Practice, p. 419, Sections 424 and 425, and cases cited; 48 C.J.S., Interpleader, p. 89, par. 37.

The issue arising out of the collection of rents was properly raised by the pleadings; and definite proof was made during the hearing as to the amount of the rents collected by the appellee. The chancellor found that the net rentals, after deducting taxes, insurance and repairs, amounted to $3,545.39, and the chancellor should have entered a decree in favor of the appellants for one-third of that amount and should have directed that same be paid to the appellants out of the appellee's two-thirds part of the funds on hand for distribution.

The decree appealed from will therefore be reversed on the appellants' direct appeal, and the cause remanded to the lower court, with directions that a decree be entered for the division and disbursement of the funds by the clerk between or among the parties in the ratio provided in the decree appealed from, but also providing for the payment to the appellants, out of the appellee's share of the funds, of the sum of $1,181.79, in settlement of the appellants' pro rata share of the net rentals collected by the appellee from the property after the termination of Mrs. L. C. Moorer's life estate on March 23, 1952.

Reversed on direct appeal and affirmed on cross appeal, and remanded.

*McGehee, C.J.*, and *Hall, Lee* and *Gillespie, JJ.*, concur.